UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| MELISA J. BURWICK, | : Case No. 3:19-cv-159 |
| Plaintiff, | : |
| vs. | : Magistrate Judge Sharon L. Ovington |
| | : (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

**DECISION AND ENTRY**

**I.      Introduction**

In November 2015, Plaintiff Melisa J. Burwick filed an application for Disability Insurance Benefits and for a period of disability benefits. The claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, Administrative Law Judge (ALJ) Deborah F. Sanders concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review.

Plaintiff subsequently filed this action. She seeks a remand for benefits, or in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. No. 9), the Commissioner's Memorandum in Opposition (Doc. No. 12), Plaintiff's Reply (Doc. No.

13), and the administrative record (Doc. No. 8).

## II. Background

Plaintiff asserts that she has been under a disability since May 1, 2014. At that time, she was forty-three years old. Accordingly, she was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(c). She has at least a high school education.

The evidence of the record is sufficiently summarized in the ALJ's decision (Doc. No. 8-2, Page ID 63-78), Plaintiff's Statement of Errors (Doc. No. 9), the Commissioner's Memorandum in Opposition (Doc. No. 12), and Plaintiff's Reply (Doc. No. 13). Rather than repeat these summaries, the Court will focus on the pertinent evidence in the discussion below.

## III. Standard of Review

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986); *see* 42 U.S.C. § 423(a)(1). The term "disability"—as defined by the Social Security act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §423 (d)(1)(A); *see Bowen*, 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ

are supported by substantial evidence." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakely*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance…" *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**IV.    The ALJ's Decision**

As noted previously, the Administrative Law Judge was tasked with evaluating the

3

evidence related to Plaintiff's application for benefits. In doing so, the Administrative Law Judge considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. She reached the following main conclusions:

Step 1: Plaintiff did not engage in substantial gainful employment after May 1, 2014.

Step 2: She has the severe impairments of seizures, migraines, depressive disorder, anxiety disorder, and borderline intellectual functioning.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "full range of work at all exertional levels but with the following nonexertional limitations: (1) never climbing ladders, ropes, or scaffolds; (2) no exposure to unprotected heights or dangerous machinery; (3) never operating a commercial motor vehicle; (4) avoiding concentrated exposure to extreme heat or humidity; (5) no work at a noise level greater than '3' as defined by the DOT; (6) avoiding bright lights such as strobe or bright flashing lights; (7) avoiding concentrated exposure to excessive vibration; (8) simple, routine, repetitive, 1-3 step tasks; (9) no work involving fast-paced production rate pace or strict quotas; (10) occasionally interacting with coworkers and supervisors; (11) occasionally interacting with the public but not in a customer service capacity; (12) can adapt to infrequent changes requiring advance notice of any major changes with gradual implementation of major changes; (13) off-task 5% daily; (14) may be absent more than 8 but less than 10 days per year."

Step 4: Plaintiff has no past relevant work.

Step 5: Plaintiff could perform a significant number of jobs that exist in the national economy.

(Doc. No. 8-2, PageID 65-78). Based on these findings, the Administrative Law Judge ultimately concluded that Plaintiff was not under a benefits-qualifying disability. *Id.* at 78.

4

**V.     Discussion**

Plaintiff raises two primary issues in the present action. First, she contends that the Administrative Law Judge reversibly erred at Step Three by failing to meaningfully evaluate whether Plaintiff's impairments met or equaled the relevant Listings. (Doc. No. 9, PageID 656). Second, Plaintiff argues that the Commissioner failed to carry its Step Five burden because the ALJ erred in assessing the medical opinion evidence and Plaintiff's residual functional capacity. *Id.* at 658.

**A.     Listings**

Plaintiff first asserts that her severe impairments could have reasonably met Listing § 11.02(A) and § 11.02(B). (Doc. No. 9, PageID 656). She contends that the ALJ's discussion as to Listing § 11.02(D) did not satisfy the ALJ's obligation in determining whether she met or equaled Listing 11.02. *Id.*

At Step Three, the ALJ must determine whether the claimant has an impairment that meets or medically equals one of the listed impairments in Appendix 1, Subpart P (the "Listings"). 20 C.F.R. 404.1520(a)(4)(iii). The Listings describe impairments that are considered by the Social Security Administration to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). Indeed, "neither the listings nor the Sixth Circuit require the ALJ to 'address every listing' or 'to discuss listings that the applicant clearly does not meet.'" *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (citing *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013)). However, the ALJ should discuss the relevant listing "where the record raises a 'substantial

5

question as to whether [the claimant] could qualify as disabled under a listing." *Id.* (citing *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)). The claimant has the burden at this step to establish that she meets or equals a listed impairment. *Roby v. Comm'r of Soc. Sec.*, 48 F. App'x 532, 536 (6th Cir. 2002).

In the instant case, the Administrative Law Judge evaluated whether Plaintiff's severe impairments met or equaled Listing § 11.02(D). Her supporting analysis was limited to the following:

> Migraine headaches are evaluated under section 11.02(D), which addresses dyscognitive seizures. This requires headaches occurring at least once every two weeks for at least three consecutive months despite adherence to prescribed treatment and marked limitation in physical functioning or one of the mental functioning categories.
>
> Evidence of the frequency of the [Plaintiff's] headaches does not meet this listing. The record does not show the requisite seizure pattern despite adherence. The evidence actually indicates questions about [Plaintiff's] medication adherence given the lab work results of subtherapeutic levels and attributed to be the most obvious cause of [Plaintiff's] recurrent seizures.
>
> Addressing the physical functioning prong of 11.02(D), there is no evidence in the medical record the [Plaintiff] has disorganization in motor function in two extremities resulting in an extreme limitation. She is typically noted to be ambulating effectively with no neurological abnormalities noted on physical examinations.

(Doc. No. 8-2, PageID 72-73) (citations omitted). The other sections of Listing § 11.02 were not individually evaluated. Yet, the ALJ stated, "[t]he severity of [Plaintiff's] physical impairments, considered individually and in combination, did not meet or medically equal the criteria of a listing in section 11.02 (epilepsy), or any other section in 20 CFR Part 404, Subpart P, Appendix 1 through the date last insured." (Doc. No. 8-2, Page ID 72). At Step Three, the ALJ also evaluated Plaintiff's severe impairments under

6

Listings § 12.04, § 12.06 and § 12.11. *Id.* at 73.

Plaintiff argues her severe impairments should have been evaluated under two other relevant sections: § 11.02(A) and § 11.02(B). In support of her assertion, Plaintiff cites to specific evidence that her severe impairments met or medically equaled these sections. Turning first to § 11.02(A), Plaintiff was required to show "generalized tonic-clonic seizures occurring at least once a month for at least 3 consecutive months despite adherence to prescribed treatment." "Generalized tonic-clonic seizures" are also known as "grand mal seizures." Centers for Disease Control and Prevention (CDC), Epilepsy: Types of Seizures (Sept. 30, 2020, https://www.cdc.gov/epilepsy/about/types-of-seizures.htm.

Plaintiff argues the evidence in the record demonstrates that she suffers from this type of seizure, and points to treatment records from February 2015. (Doc. No. 9, PageID 649, 656). On February 26, 2015, Plaintiff, accompanied by her son, presented to the Emergency Department after having several seizures. (Doc. 8-7, PageID 394). Treatment notes indicate that her son witnessed all of the seizures and "describe[d] the seizures as tonic clonic." *Id.* Plaintiff's son also reported that it appeared "as if [Plaintiff] lost consciousness during the seizures." *Id.* Plaintiff complained of a migraine headache and photo and phonophobia. *Id.* Treatment notes state that the "only obvious cause of [Plaintiff's] recurrent seizures [that] morning [was] because of a Dilantin level that [was] not within the therapeutic range." *Id.* at 397.

In accordance with § 11.02(A), Plaintiff must have also adhered to prescribed treatment. Plaintiff acknowledges the low Dilantin levels from the aforementioned hospital visit but points to evidence that suggests she was not at fault for the low medication levels

7

that led to her seizures. And, based on a review of the record, the medical evidence does raise a reasonable question as to whether Plaintiff truly failed to adhere to treatment. For instance, when Plaintiff saw Dr. Glickfield about a week after she presented to the Emergency Department, she reported that she had not missed any doses despite the low levels. (Doc. 8-7, PageID 338). Treatment notes indicate that even though a neurologist increased her medication level, Plaintiff's level was still low two days after the increase even though she was having side effects. *Id.* Plaintiff's provider noted that they were "[n]ot sure why medications that might decrease seizure threshold are actually the issue as to why level was too low," and there was concern Plaintiff "may have gotten a reduced effective dose." *Id.* Based on this evidence, there is a reasonable question as to whether the low-medication levels are solely attributable to Plaintiff's adherence. Moreover, the ALJ does not definitively conclude in her analysis of § 11.02(D) that Plaintiff did not adhere but merely indicates that the evidence raises questions about medication adherence.

Plaintiff also argues that she met the requisite frequency for consecutive months as required under § 11.02(A). (Doc. No. 9, PageID 656). In April 2015, Plaintiff reported that she had been experiencing different types of seizures at different frequencies including Type 1 seizures almost two to three times per day, Type 2 seizures at nighttime almost one time every two to three nights, and Type 3 ("major") seizures approximately two to three times per month.[1] (Doc. No. 8-7, PageID 352). In July 2015, Plaintiff reported that she

---

[1] Treatment notes describe Type 1 seizures as "30 sec staring spells, with eyes going 'glassy,' slurring of speech and loss of awareness, followed by return to baseline, with no recollection of the spell." Likewise, they describe Type 2 seizures as "10 sec nocturnal spells of right UE and LE twitches, that happen in the middle of the night, noted by her husband. She never wakes up from sleep but has had instances of bedwetting with this. When woken up, she has a

had "6 spells" in the last three months since her visit in April. *Id.* Her sister reported "great improvement in terms of frequency of the seizures," but Plaintiff still experienced Type 1 seizures four times and Type 3 seizures two times. *Id.* Plaintiff also cites to evidence of seizures occurring in 2016 and reports she "had experienced between 100 to 150 seizures in the past year." (Doc. No. 9, PageID 657) (Doc. No. 8-7, PageID 452). Therefore, there is evidence that supports Plaintiff's contention that she suffered from tonic-clonic seizures at least once a month for three consecutive months.

Notably, the ALJ does not mention the term tonic-clonic anywhere in her decision, and only once mentions grand mal seizures (in her Step Four analysis) presumably in reference to Plaintiff's testimony at the hearing. (Doc. No. 8-2, PageID 76). At the hearing, they had the following exchange:

> Q: …how often do you have these big seizures, the grand mal seizures?
>
> A: I'm having them once or twice. Maybe once a month I'm having a grand mal seizure.

*Id.* at 98. It is concerning that the ALJ failed to mention the relevant information in her Step Three analysis given that Plaintiff's testimony suggests that her severe impairments may satisfy the requisite seizure type (i.e. tonic clonic/grand mal) and seizure frequency (once per month for three consecutive months) required under § 11.02(A). Ultimately, the

---

post-spell confusion and disorientation phase that lasts many minutes." And finally, Type 3 seizures are detailed to be "1 min long "full blown" motor convulsions of the whole body, which usually is preceded by grunting, flinching of right hemiface/hemibody, staring and slurring of speech (as if she is drunk). Postictally she takes 20-30 mins to come around but is very sore and tired. These spells are most often preceded by a day of 'bad headache,' or being tired from travel or being moody and depressed." (Doc. No. 8-7, PageID 352).

9

record raises a substantial question as to whether Plaintiff could qualify as disabled under § 11.02(A). Thus, Plaintiff's contention as to § 11.02(A) is well taken.

On the contrary, the ALJ did not err as to § 11.02(B). Under § 11.02(B), Plaintiff was required to show "dyscognitive seizures occurring at least *once a week* for at least 3 consecutive months despite adherence to prescribed treatment." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing § 11.02. This section addresses a different type of seizure than the type required by § 11.02(A) as discussed above. The requirements of § 11.02(B) are similar to those set forth in § 11.02(D) although there are two primary differences. First, § 11.02(D) has a less stringent frequency requirement necessitating "dyscognitive seizures occurring at least *once every 2 weeks* for at least 3 consecutive months," rather than once a week as required by § 11.02(B). *Id.* Listing § 11.02(D) also requires marked limitation in certain areas (i.e. physical or mental functioning). *Id.*

Based on these differences, it is reasonable that the ALJ declined to evaluate Plaintiff's severe impairments under both § 11.02(B) and § 11.02(D). Both sections pertain specifically to dyscognitive seizures. And, while there are some differences, it is easy to discern why the ALJ did not evaluate Plaintiff under § 11.02(B). Listing § 11.02(D) possesses a less stringent frequency requirement than § 11.02(B), and the ALJ determined that Plaintiff's dyscognitive seizures and migraines did not meet the frequency required under § 11.02(D). (Doc. No. 8-2, PageID 73). If Plaintiff did not meet the lesser frequency required in § 11.02(D), then she certainly would not meet the higher frequency required under § 11.02(B). Therefore, the ALJ did not err as to § 11.02(B).

Additionally, while Plaintiff does not allege that the ALJ erred in finding that Plaintiff's severe impairments did not meet or equal Listing § 11.02(D), it appears that the ALJ did not properly analyze Plaintiff's severe impairments under that section. The ALJ correctly notes that § 11.02(D) requires "marked limitation in physical functioning <u>or</u> one of the mental functioning categories" in addition to the other requirements. However, in the analysis the ALJ does not appear to apply these requirements. (Doc. No. 8-2, PageID 72). The ALJ instead states that in "[a]ddressing the physical functioning prong of 11.02(D), there is no evidence in the medical record [that Plaintiff] has disorganization in motor function in two extremities resulting in an extreme limitation." *Id.* at 73. Listing § 11.02 as a whole, does not require that the claimant meet such criteria, and Listing § 11.02 is enumerated as an exception to this specific criterion. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 ("All listings in this body system, except for 11.02 (Epilepsy)…include criteria for disorganization of motor function that results in an extreme limitation in [claimant's] ability to (a) [s]tand up from a seated position; or (b) [b]alance while standing or walking; or (c) [u]se the upper extremities"). Therefore, although the ALJ cites to the correct requirement, she did not apply that requirement and instead applied criteria that is not in any section of Listing § 11.02. Nevertheless, this particular error is harmless because Plaintiff lacked marked limitation in physical functioning or one of the mental functioning categories. (Doc. No. 8-2, PageID 73).

In sum, the Administrative Law Judge failed to appropriately evaluate Plaintiff's severe impairments at Step Three. As reasoned above, the ALJ should have evaluated Plaintiff's severe impairments under § 11.02(A) or, at the very least, provided some

11

reasoning for declining to do so. Such an error is not harmless and is grounds for reversal because had the ALJ evaluated Plaintiff's severe impairments under this section and found Plaintiff's severe impairments met or medically equaled the Listing, then Plaintiff was entitled to a finding that she was disabled under the Social Security Regulations. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011).

### B. Residual Functional Capacity and Opinion Evidence

Plaintiff also criticizes the ALJ's evaluation of her residual functional capacity and contends that it does not adequately account for the medical-opinion evidence. (Doc. No. 9, PageID 659-662). The ALJ limited Plaintiff to "occasionally interacting with coworkers and supervisors" and "occasionally interacting with the public but not in a customer service capacity." (Doc. No. 8-2, PageID 74). This allegedly did not appropriately account for her limitations as the medical opinions limited her to "superficial" interactions rather than "occasional" and such terms are not coterminous. (Doc. No. 9, PageID 661).

Dr. Todd Finnerty described this limitation in his medical opinion. Dr. Finnerty opined that Plaintiff should be "limited to only brief, superficial interaction with the general public, co-workers, and supervisors." (Doc. No. 8-2, PageID 70). Dr. Finnerty's opinion was afforded "great weight." *Id.* Dr. Schwartzman's opinion, which was afforded "partial weight," also articulated this limitation using identical terminology. *Id.*

While "there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim," *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015), if an ALJ "assigns significant weight to a particular opinion and states it is consistent with the record, he must incorporate the opined limitations or provide an explanation for

12

declining to do so." *Lindsey v. Comm'r of Soc. Sec.*, No. 2:18-CV-18, 2018 WL 6257432, at *5 (S.D. Ohio Nov. 30, 2018) (Vascura, M.J.), Report & Recommendation, *adopted*, No. 2:18-CV-018, 2019 WL 133177 (S.D. Ohio Jan. 7, 2019) (Sargus, D.J.).

In the instant case, the ALJ's failure to meaningfully explain the discrepancy between Plaintiff's RFC determination and Dr. Finnerty's opinion constitutes error. *See generally Wood v. Comm'r of Soc. Sec.*, No. 3:18-CV-76, 2019 WL 1614591, at *3 (S.D. Ohio April 16, 2019) (Newman, M.J.), *report and recommendation adopted*, No. 3:18-CV-76, 2019 WL 1958663 (S.D. Ohio May 1, 2019) (Rice, D.J.). In assessing Plaintiff's RFC, the ALJ does not sufficiently explain why she elected to replace the term "superficial" with "occasional," nor does she account for the limitation related to Plaintiff's need for "superficial" interactions with others elsewhere in the RFC.

In opposition, the Commissioner alleges the ALJ did sufficiently explain her reasoning for limiting Plaintiff to "occasional" rather than "superficial" interactions, and points to the ALJ's discussion in Step Three. (Doc. No. 12, PageID 682). At that step, the ALJ acknowledged Dr. Finnerty and Dr. Schwartzman's finding that Plaintiff had a moderate limitation in her ability to interact with others. (Doc. No. 8-2, PageID 71). But in reliance on other medical-opinion evidence and treatment records, the ALJ found that Plaintiff only exhibited a mild limitation in this area. *Id.*

Drawing support from Dr. Chiappone's medical opinion, the ALJ cites the evaluating physician's finding that "there was no evidence of any significant difficulty with the claimant's capacity for interactions with other persons..." *Id.* Even though it may appear, as the Commissioner alleges, that the ALJ properly justified her decision, other

13

aspects of the ALJ's decision undermines this justification. For example, prior to citing to Dr. Chiappone's opinion in this regard, the ALJ determined that the opinion was only entitled to "little weight." *Id.* at 69. Yet, the ALJ relies on this opinion of "little weight" in attempting to discredit, or at the very least downplay, the opinion of Dr. Finnerty which was afforded "great weight." And, although Dr. Schwartzman's opinion was only afforded "partial weight," it was identical to Dr. Finnerty's opinion as to this limitation.

Additionally, while the ALJ also cites to treatment records in support of her determination that Plaintiff only had a mild limitation in her ability to interact with others, the ALJ does not reason how "occasional" interactions better align with a mild limitation than "superficial" interactions given that the terms offer a different meaning, and such terms are not interchangeable. *Lindsey*, 2018 WL 6257432, at *4 (citing *Hurley v. Berryhill*, No. 1:17-CV-421-TLS, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018) ("'Occasional contact' goes to the quantity of time spent with [ ] individuals, whereas 'superficial contact' goes to the quality of the interactions"). Therefore, given the disconnect in the ALJ's reasoning, she committed reversible error in failing to properly account for this limitation or at least sufficiently explaining why she declined to do so.

Likewise, the ALJ erred as to the hypothetical posed to the vocational expert (VE). During the hearing, the hypothetical pertained only to "occasional" interactions with the public, co-workers and supervisors rather than "superficial" interactions. (Doc. No. 8-2, PageID 120). And in turn, the ALJ relied on the vocational expert's responses to the hypothetical that limited the individual to only "occasional" contact. *Id.* at 78. The question posed to the vocational expert did not accurately portray Plaintiff's impairments

14

and cannot serve as substantial evidence that Plaintiff has the ability to perform specific jobs. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (citing *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (At Step Five, the Commissioner was required to "make a finding 'supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs'"); *see also Varley*, 820 F.2d at 779 (A vocational expert's testimony may serve as substantial evidence so long as the hypothetical question accurately portrays the claimant's physical and mental impairments). Therefore, the ALJ failed to meet her burden at Step Five. *See Wood*, 2019 WL 1614591, at *3 ("[T]he ALJ failed to meet his burden at Step Five because the Court cannot discern whether the additional limitation—to 'superficial contact'—would preclude substantial gainful employment in the national economy") (citations omitted).

Plaintiff also challenges other aspects of the hearing testimony, but such challenges are without merit. She cites to her "severe, persistent symptoms" that would have caused her to miss more than the allowable one day per month as reflected in the hypothetical. (Doc. No. 9, PageID 658-59). During an exchange with Plaintiff's counsel, the VE testified that the jobs previously discussed would be ruled out if the individual were required to take two to three unscheduled 30-40-minute breaks on top of regular breaks per week either to lie down or for petit mal seizures. (Doc. No. 8-2, PageID 122).

Plaintiff suggests that the hypothetical posed by her counsel and the vocational expert's related testimony should serve as proof that she would be unable to sustain competitive employment at any exertional level. However, no error occurred when the ALJ declined to rely on the testimony related to counsel's hypothetical as the hypothetical

15

is not substantiated by the evidence in the record. *See Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115 118 (6th Cir. 1994) ("[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypothetical.") Plaintiff points to the medical opinion of state agency consultant, Dr. Judith Schwartzman, who indicated that when Plaintiff's symptoms increase, "she [would] occasionally need flexibility in work schedule, taking breaks, and pacing." (Doc. No. 8-3, PageID 137). However, the ALJ only afforded Dr. Schwartzman's opinion "partial weight" and declined to afford more weight because the ALJ found "no basis for the restriction allowing for the claimant to have 'occasional flexibility in work schedule, taking breaks, and pacing when symptoms increase.'" (Doc. No. 8-2, PageID 70). Even if the ALJ had found that the opinion was supported by the evidence in the record, the opinion does not suggest how many breaks Plaintiff would need or how long those breaks would last. Therefore, it is evident that the specifics included in counsel's hypothetical were not derived from, and cannot be substantiated by, Dr. Schwartzman's opinion alone. And, as the Commissioner notes, "no medical source quantified any such level of breaks." (Doc. No. 12, PageID 683).

## VI. Remand

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*,

16

478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming, and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Disability Insurance Benefits should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. The ALJ's non-disability decision is vacated;

2. No finding is made as to whether Plaintiff Melisa J. Burwick was under a "disability" within the meaning of the Social Security Act;

3. This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this decision; and

2. The case is terminated on the Court's docket.

March 4, 2021                      *s/Sharon L. Ovington*
                                                                    Sharon L. Ovington
                                                                    United States Magistrate Judge